UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRAINTREE LABORATORIES, INC., and AFFORDABLE PHARMACEUTICALS, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 16-11936-IT |
| BEDROCK LOGISTICS, LLC, | * * | |
| Defendant. | * | |

MEMORANDUM AND ORDER

December 8, 2016

TALWANI, D.J.

Plaintiffs Braintree Laboratories, Inc., and its subsidiary Plaintiff Affordable Pharmaceuticals (collectively, "Braintree"), are Massachusetts pharmaceutical companies. Amended Complaint ¶¶ 2-3 [#39]. They bring this action against their former shipping contractor, Texas-based Bedrock Logistics, LLC ("Bedrock"). Now before the court is Bedrock's Motion to Transfer [#19] the case to the United States District Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a). For the following reasons, the Motion is DENIED.

Background

On September 15, 2016, Braintree sent Bedrock a demand letter asserting that Bedrock engaged in a deceptive kickback scheme to obtain and maintain Braintree's business at inflated rates. That letter offered pre-litigation settlement and set September 26, 2016, as the deadline for response. See Rakhunov Decl., Ex 2, incorporating Pollack Decl., Ex. B [#34-2].  On September 19, 2016—four days after Braintree sent their demand—Bedrock filed suit in Texas state court seeking collection of unpaid invoices related to the transactions at issue in the demand letter. See

McManama Decl., Ex. 1-A [#20-1].

Braintree commenced its action here on September 27, 2016—one day after the demand letter's deadline—and served Bedrock with process three days later. Executed Summons [#6]. On October 4, 2016, Bedrock served Braintree with process in the Texas state-court action, which Braintree then removed to the United States District Court for the Northern District of Texas. See Notice of Removal, No. 16-02815-M (N.D. Tex. October 4, 2016).[1]

Bedrock now moves, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the Northern District of Texas.

Discussion

Title 28, Section 1404(a) permits a district court to transfer a case to another district where it might have been brought "for the convenience of parties and witnesses" and "in the interest of justice." Often an important factor in such motions is "the order in which the district court obtained jurisdiction," Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000), which potentially affects not only which forum should be preferred, but also which forum should adjudicate the Section 1404(a) issue. Bedrock, whose state court action was filed first, premises its motion primarily on this ground. Braintree rejoins that the convenience of witnesses and interests of justice warrant denial, and argues further that a transfer to Texas is improper because the Texas courts lack personal jurisdiction over Braintree.

A. *The Texas Filing Neither Precludes this Court's Resolution of the Issue Nor Mandates Transfer*

As a threshold issue, Bedrock contends that its invocation of the "first-filed rule" requires this court to determine only whether the issues here substantially overlap with those in Texas, in

---

[1] Braintree contests personal jurisdiction in Texas and has alternatively moved to transfer that case here. Motion to Dismiss or Transfer, No. 16-02815-M (N.D. Tex. November 8, 2016). That motion remains pending.

which case this court must allow the Texas court to determine where this matter ultimately proceeds. See Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 606 (5th Cir. 1999) (explaining that court considering second-filed action should decide if two cases pose "substantially similar issues," and if so, should transfer the action to the district with the first-filed action for that court to decide whether the action "must be dismissed, stayed, or transferred and consolidated."). Bedrock's argument rests on its view that its state-court action was "first" for purposes of this rule, rendering Braintree's action here "second" despite the later removal date. The court disagrees.

When "the overlap between the two suits is nearly complete, the usual practice is for the court that first *had jurisdiction* to resolve the issues and the other court to defer." TPM Holdings, Inc. v. Intra-Gold Industries, Inc., 91 F.3d 1, 4 (1st Cir. 1996) (emphasis added); see Coady v Ashcroft, 223 F.3d 1, 11 (1st Cir. 2000) (court should determine which of "two *federal courts . . . obtained jurisdiction*" first) (emphasis added); Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987) (district court should consider "the order in which jurisdiction was obtained by the district court . . . ."). These decisions, which reference federal *jurisdiction*, do not explicitly address the removal context presented here, where one party obtained federal jurisdiction first, but only after the other party filed a state court action. Nonetheless, with respect to the threshold question of which forum should decide where the case proceeds, using the First Circuit's *jurisdictional* timeline provides an orderly and predictable method of proceeding. In contrast, using a state court filing date to determine this threshold question could require a federal court that obtains jurisdiction through removal of an older state court action to make the Section 1404(a) determination long after another federal court has obtained jurisdiction over (and already begun adjudicating) a substantially similar federal case. Thus, because this court

obtained jurisdiction of this case first, this court may properly entertain the § 1404(a) issue.

Yet, neither this analysis nor the cited First Circuit cases cleanly dictate, in this removal context, where this court should accord a "preference" in *resolving* the Section 1404(a) issue. Courts recognize a "strong presumption in favor of the plaintiff's choice of forum," Coady, 223 F.3d at 11 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)), and here, the first-filed rule may bestow that presumption on Bedrock because, in regard to the second question of *where the case should be*, there seems no meaningful reason to distinguish between state and federal court jurisdiction. See, e.g., Hartford Acc. & Indem. Co. v. Margolis, 1992 WL 43484 at *1 (9th Cir. March 5, 1992) ("[w]hen an action is commenced in state court and removed to federal court, the action remains the same. It is simply pending in a different court after removal than before.").

It is unnecessary, however, for this court to grapple with whether the jurisdictional timeline should be applied to this second question, because in any event any such preference yields when "the first-filed action was the result of a race to the courthouse" or "when the balance of convenience favors allowing the later-filed action to proceed." Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 124-25 (D. Mass. 2000).

Here, Bedrock filed its state-court action within the eleven-day provided by Braintree's demand letter setting forth the full extent of their allegations; and the Texas litigation seeks recovery on the same transactions illuminated by Braintree's demand. Bedrock thus appears implicated in the "procedural fencing" that militates against application of the "first-filed rule." OsComp Sys., Inc,. v. Bakken Exp., LLC, 930 F. Supp. 2d 261, 274 (D. Mass. 2013). The rule is not intended to provide defendants first threatened in one district refuge in another.

And regardless, even were the rule to squarely apply without triggering exceptions for

races to the courthouse, neither Section 1404(a) itself nor its interpretative case law demands its rigid application. Indeed, the First Circuit at one point "found no case where [the rule] has carried the day against factors pointing in the other direction," Codex Corp. v. Milgo Electronic Corp., 553 F.2d 735, 739 (1st Cir. 1977), and the Coady court more recently described the "rule" as a general preference. Accordingly, the court turns to consideration of the remaining Section 1404(a) factors.

   B. *The Remaining 28 U.S.C. § 1404(a) Factors*

The convenience of parties and witnesses and interest of justice require consideration of the "relative ease of access to sources of proof [ . . . ] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses [. . .] and all other practical problems that make trial of a case easy, expeditious and inexpensive." Atlantic Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas, 134 S.Ct. 568, 581 n.6 (2013) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)). The court may also consider such public interest factors as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Id. (quoting Piper Aircraft Co., 454 U.S. at 241 n.6).

Here, the relevant factors weigh in Braintree's favor.

   1. Key witnesses and documents are in Massachusetts.

The convenience of witnesses is "probably the most important factor" to be considered by the court under Section 1404(a). Boateng v. General Dynamics Corp., 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (quoting Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991)). Courts "particularly" consider the convenience of "nonparty witnesses important to the

5

resolution of the case," 15 Wright & Miller, Federal Practice and Procedure, § 3851 (4th ed.), and the Supreme Court has specifically articulated concerns about the "availability of compulsory process for attendance of unwilling [witnesses]. . . ." Atlantic Marine Const. Co., 134 S.Ct. at 581 n.6.

Braintree has specifically identified by name and subject several key witnesses who live in Massachusetts. Braintree alleges that Bedrock directed a Massachusetts-based sales agent named Jim Sears (allegedly an employee of one of Braintree's competitors) to pay kickbacks to Massachusetts-based Henry Villalobos (then a Braintree employee) who arranged for Braintree's continued use of Bedrock's services at a 40% premium. Pl's Opposition 3, 4 [#33]. Braintree contends further that Bedrock's management, including Bedrock's former President (and Massachusetts resident) Charles McCabe, was involved in this scheme. Id.[2] None of these witnesses are parties to this case, and none are employed or controlled by Braintree. And all these individuals reside outside the Northern District of Texas' subpoena power. See Federal Rule of Civil Procedure 45(c).

In contrast, Bedrock explains only that it generally expects members of its accounting, information technology, and sales departments to testify, the latter of whom will testify specifically to the relationship between the parties. Pl's Mot. to Transfer, 7 [#20]. These witnesses (as well as Mr. Luckett) are Bedrock employees subject to Bedrock's control, and can thus testify in this court should Bedrock so request. Moreover, the court accords more weight to Braintree's specific identification of Massachusetts-based witnesses than to Bedrock's generalized expectations—especially when Bedrock is the moving party. See Piper Aircraft Co.,

---

[2] A fourth witness, Bedrock's Florida-based Vice President of Sales William Luckett, lives in Florida, which favors neither party.

454 U.S. at 258 ("[D]efendants must provide enough information to enable the District Court to balance the parties' interests."); Princess House, 136 F.R.D. at 18 ("A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail.") (emphasis supplied).

Further, while Bedrock may expend resources litigating in Massachusetts, including the transportation of witnesses and evidence (including documentary evidence), Braintree will bear such costs with equal force if compelled to litigate in Texas and, unlike Bedrock, may additionally be deprived of trial testimony from identified, out-of-state, non-party witnesses because of the absence of compulsory process. Thus, the convenience factor weighs in Braintree's favor.

    2.   Other Section 1404(a) factors also favor a Massachusetts forum.

The remaining relevant factors are either neutral or favor Braintree.

For example, Bedrock allegedly orchestrated and carried out its "kickback scheme" in Massachusetts. Braintree's papers claim that Bedrock, through *Massachusetts-based* agent Jim Sears, with knowledge of Bedrock's former President and *Massachusetts resident* Charles McCabe, paid bribes to Braintree's *Massachusetts-based* former employee Henry Villalobos, in order to deceptively obtain the contract to ship product from Braintree's *Massachusetts facilities*. While Braintree remitted payment to Bedrock's Texas location, the crux of the alleged kickback scheme rests in Massachusetts, evincing in Braintree's favor "a significant connection between this forum and the issues." OsComp Sys., 930 F. Supp. 2d at 275.

Further, the Supreme Court instructs that courts ought to consider "the local interest in having localized controversies decided at home." Atlantic Marine Const. Co., 134 S.Ct. at 581 n.6. Here, Massachusetts' interest in adjudicating deceptive practices suits involving

Massachusetts companies is at least tantamount to, and arguably greater than, Texas's interest in adjudicating contract disputes involving Texas companies. Finally, no party proffers a comparative determination of administrative difficulties between the fora, nor asserts that a choice of law analysis occasioned by diversity jurisdiction militates for one forum over the other.

>    C.   *The court needs not reach the issue of whether the Northern District of Texas has personal jurisdiction over Braintree Laboratories*

Section 1404(a) permits this court to transfer an action "to any other district or division where it might have been brought." While Braintree contests the Texas courts' personal jurisdiction, the foregoing renders resolution of this issue unnecessary.

Conclusion

Accordingly, Bedrock's Motion [#19] is DENIED.

IT IS SO ORDERED.

DATE: December 8, 2016                                    /s/ Indira Talwani
                                                         United States District Judge